Please be seated. Good morning, everyone. Welcome to the Ninth Circuit. We have three cases on the calendar for argument this morning. And before we get to the cases, Judge Lundquist and I would once again like to extend our thanks to Judge Rubino, who's sitting with us by designation. We again thank you very much for your willingness to help us out with our caseload today. Well, thank you, Judge. And if I may make a comment at the beginning of the oral argument, and if I may now. Yes, please. I just wanted to bring to counsel's attention that the Pellegrino case, which is the Third Circuit en banc decision, which we're going to talk about here today, that on remand from the en banc, I was assigned as a trial judge in that case, and that case will be going to trial later this summer. I was not the judge in the case. I was a judge who retired, and after the case came back on remand, I was assigned randomly to that particular case. So I just wanted to note that for you. I don't see any issue with that. But I wanted to let you know in the interest of transparency at all levels. Very good. Are those lawyers here right now? They're the third case? Yeah, that'll be for Lundquist, I assume, or counsel present already. Oh, well, one of them is going to be by Zoom. Okay, I can do that. Yes, yes. Well, I don't know. Is the person here? The other counsel on Zoom should be able to hear you right now. Okay, but we'll verify that when we call for Lundquist. Very good. Okay, thanks very much. I think we have one person in person and then one person on Zoom. Counsel, maybe I can just ask you, who's on Zoom, Mr. Corbett. Did you hear Judge Robrano's opening remarks at the very beginning of the calendar? Oh, good morning, Your Honor. Yes, I was able to hear that. Okay, excellent. All right, your opponent is in place, so I think we are ready to hear from you whenever you're ready to proceed. Thank you. May it please the Court. Appellant entered the courthouse, this courthouse, with just three issues. State them briefly. Number one, the extent of TSA's lawful authority to detain or forcibly search. Number two, whether you can prevent a camera owner from using that camera or whether that's trespass to chattels under California law. And number three, whether special factors allow counsel hesitation to allow a vivid remedy. Could you, at the risk of getting a sidetrack, could you start with the jurisdictional issue as to whether we have jurisdiction to hear your appeal? Sure. So the government brought up the issue of what was essentially a procedural mistake in the court below. The court below, in its dismissal order, its first dismissal order dismissing all the claims that the case brought, ordered that if plaintiff still wishes to pursue the action, she must file an amended complaint. Now, I was counsel in court below, and I read this order, and I think, okay, well, I'll consider the amendments. And I did, and I decided that an appeal was more appropriate. And so I waited until time to file the amended complaint expired and then filed the notice of appeal, since the court below did not order me to do anything if we didn't want to file the amended complaint. Obviously, hindsight, I learned that different circuits have different rules on this matter, and that circuit preferred procedure here is to file a letter with the court saying that no amended appeal will be filed if the plaintiff stands on the briefs. And notwithstanding, I filed an amended notice of appeal after the court noted that defect and dismissed the case in its entirety. The defendant says jurisdictional defect. I think this is the mark. I don't really comprehend how the government thinks this completely removes jurisdiction from this court. It seems to be more of a rule of procedure than something that is jurisdictional. Let me just express the concern, I guess, that I have. And I'm sympathetic to your situation. Our WMX rule is not the only rule that circuits have out there, and you obviously just weren't aware of it. But the initial notice of appeal you filed, I think we all have to concede that was not valid because the order you were purporting to appeal from was not final. I think that's correct. Okay. The problem, as I see it for you, is in terms of what the district court's response was because the dismissal for failure to prosecute, you know, what we'd like to say is, well, okay, at that point, you know, maybe you filed the notice of appeal prematurely, but the district court came along in September and, you know, issued the second order dismissing the case for failure to prosecute. Didn't that kind of cure whatever lack of finality existed before? The problem, as I see it with that argument, is that we do have a case that says when the subsequent order is a dismissal for failure to prosecute, it doesn't cure the finality problem such that you can now challenge the underlying ruling. You're sort of stuck with this independent ground on which the case was thrown out. And you didn't, I mean, you haven't challenged that, the basis for the dismissal for failure to prosecute. You just completely omitted any challenge to that ruling in your opening brief, so you've arguably waived that. And so, anyway, to me, it seems like you've created kind of a double quagmire for our court. I mean, the client has a sympathetic case. It would be nice to reach an issue of first impression in our circuit, but help me understand how we're going to get through that to actually reach the underlying merits. Sure. I think the cases you're speaking of are a little bit more context sensitive than might be apparent. So I think the idea behind these cases was that people were trying to get an early bite at an appeal. And as a result, the court said that, you know, you have to wait things out and follow this procedure. There's other case law that suggests that as long as there's good cause, there's no prejudice to the other side, there's no show of advancemanship, that the court really doesn't have to apply that rule. So first of all, the rule is non-jurisdictional. None of these cases ever claim that the court is deprived of jurisdiction as a result. But if you look at Al-Torki versus Kempany, that contains the kind of start to the exceptions to this rule for when the court can just say, okay, we're going to look past. I think this case presents the ideal scenario for that, where it's obvious there was no advancemanship to get an interlocutory appeal, because the case you got on every single claim in the complaint had already been thrown out. So this was really just a formality by the judge to end the case. You know, at the time that I filed the appellant's brief, the government had not really made clear its position. And so, you know, we didn't really have a good reason to think to appeal the judge's dismissal for lack of prosecution. You know, ultimately, if the court can't hear the case now, we refile. And in the district court, we get immediately dismissed over the same thing, and we come back to this court again in a year and do this all over again. So I don't truly understand why the government wants to press this matter. It's just going to waste time for all parties involved in the courts. And I think if there is a good cause exception to apply here, the interest of justice would be served by hearing the appeal. Okay. And I'm sorry to have taken up that chunk of your time on this plenary matter. I'll make sure you get the full time, so don't feel like you've got to truncate your argument on the matter. You've got a lot of ground to cover, so go ahead. Thank you. Appreciate that. So I would say that there were three issues. The first was this, whether they had lawful authority to detain or search. The second one was the camera issues. The third was the Bivens issue. And those first two, the government really did not defend the court's logic at all. They provided these two alternative bases. Number one was the jurisdictional issue that we just covered, and number two was to try and bring in the Federal Tort Claims Act restrictions on intentional torts of non-law enforcement. And, you know, in my reply brief, I was pretty surprised the government brought this up, because there was no cross-appeal filed. We won that issue in the district court. The district court concluded that the Federal Tort Claims Act does not bar the bringing of intentional tort claims against GSA screeners, which is in accordance with every circuit court of appeals to consider the matter in the last seven, eight years, Third Circuit and Eighth Circuit. And I want to encourage the court not to consider the FTCA issue, because if it is not properly here, it would result in bringing a without prejudice dismissal to a with prejudice dismissal. I don't know. Why is that? If there's no jurisdiction because there's no waiver of sovereign immunity, wouldn't it be a without prejudice also? You'd just have a different basis for without prejudice? If the court holds that sovereign immunity completely bars the claims, I can't see how it would be possible to represent them. I think we have case law saying that a dismissal for sovereign immunity is without prejudice. I think the idea is sometimes governments waive sovereign immunity. In this case, it's the United States, so you might be out of luck. But as a general concept, like a state officer who asserts sovereign immunity maybe could be sued in state court or something. So I think as a technical matter, I think you're wrong that it would change the bottom line judgment. I mean, right now, I don't need the government's permission to refile in the district courts. I guess what I'm trying to say is if the court accepts the government's position here, which I think is wrong anyway. I mean, you could get into the FTCA argument here if you want. But the reason the court shouldn't is that the issue is not well presented here. So to answer your question, I don't agree that my rights would not be limited. My client's rights would not be limited by holding here, even if it's not from technically from without prejudice to with prejudice. The standard is only whether they've enlarged their rights or not. And now the government essentially, as you just mentioned, has a veto power over a lawsuit. That's an enlargement of rights. The reason the court should not consider this issue now is that it hasn't been briefed fully. This is a complicated issue that's extremely important, so much so that the Third Circuit heard it and decided against the government. And the issue is also set to be addressed by this court in another case that was recently filed. That case is Muthalteh versus United States number 21-15402. The Ninth Circuit will have a chance to get this issue. But this issue is not briefed. I feel like the parties briefed this issue in this case. Your Honor, I could probably write 30 pages in an opening brief on this issue. It really is a complex matter because it involves getting into the nitty-gritty of the legislative history and what the statute actually means. So to have to hit it in a reply brief just isn't fair. And it's not the way that we should develop important precedent. This issue deserves its full briefing. And to just hit it in a reply brief in the merits, I think — You would win on it. Let's move on. Same thing. We agree with your position. But how do we get past the rest of this? Say you are able to sue. Let's talk about maybe the cell phone. If we said in this courtroom that you had to turn off your cell phone to come into this courtroom, would that be trespass of chattels? I think that there would be some governmental privilege there that would defeat such a claim. I mean, first, I want to point out again that the government did not defend the logic of the court below on this. The government did not defend the court's idea that this was too brief of a deprivation to count. So I think if the court finds we have a jurisdictional issue and we have a TCIA issue, the government has waived any of the rights to the rest of its claims. But to answer the court's question — They gave a defense. I mean, we're de novo, I think, on these issues of law. So the district court gave a basis. We could decide this issue, I think, whether we should affirm or not as a matter of law. So maybe we should send it back if we need that. But the district court already ruled on this issue, so why was the district court right? Or wrong, I guess wrong in your view. Sorry. The district court was wrong because there was an actual deprivation of my client's ability to use her properties. This was compared to a case where a person used a computer network without permission, and that use of the computer network didn't actually deprive anyone else of their use of the computer network. The computers were able to handle the additional load. In this case, a camera only has one possible user at a time, and my client was completely unable to use it. The idea that this was too — So would you be, if we said you have to lock your cell phone with the marshals before you come in the courtroom, or if we let you bring it in but say it has to be off? Certainly. The court may be privileged to make those orders. However, the TSA has not made those orders. TSA has a policy that filming is allowed at the checkpoint so long as it doesn't capture X-ray screens and other sensitive information. So as a general rule, the government does not have that privilege in this circumstance. Did I answer your question, Joe? Proceed. Yes, please proceed. The second question was the lawful authority question, whether TSA has — essentially whether a plaintiff adequately pled that she was unlawfully detained. And here there was a conflation of what the Constitution might permit versus what TSA's statutory authorization actually is. The government, you can see in the way that they describe the FTCA claim, says that their screeners don't have the authority to detain or to force anyone to do anything. That they're just these checkpoint clerks. Yet the court below found that maybe they did have lawful authority, and that's just absent from the statute. These people do not have any right to use physical force other than self-defense that any person might have. And the court below's finding that they did was simply a misreading of the person at the circuit and finding that the Constitution doesn't require consent. I think I've gone through what I have to say. If there's no more questions. Okay, very good. We'll certainly give you plenty of time to respond while we hear from the government now. Thank you, Your Honor. Sharon Swingle from the Department of Justice representing the defendants' FLEs. Perhaps I could start where the court began with the question of jurisdiction. As Your Honors are aware, we do believe the court lacks appellate jurisdiction here. I think this clarified one thing at the outset. It can't happen if you split the big. It's not, Your Honor, and I think it would resolve everything. I think our brief was not entirely clear about that. Obviously, since this court's in-bank decision in WMX, it has been clear that where a court dismisses with leave to amend, that's not final. There is an obligation either to comply with the court order or to file an amended complaint. And here I would point out the district court's order was quite clear that a failure to do so would result in dismissal. Or if the plaintiff chooses instead to rely on the allegations in the extant complaint to go back and notify the court. And that is not some minor procedural step, right? I think the court's decisions are clear in Lopez and WMX that the purpose of doing that is to then allow the district court to enter a final order dismissing the action, which would then itself be an appealable order. And here instead, you know, there was no amended complaint filed. And I think it might be useful to sort of go back and trace a little bit of the history of the litigation here. The complaint here was initially filed. There had actually been an earlier complaint that was voluntarily dismissed for failure to exhaust administrative remedies. Then the original complaint in this case was filed. There were motions to dismiss filed both by the government and the individual defendants. A plaintiff did not respond to those motions. They were granted, but the district court, you know, so a sponte granted leave to amend and instructed the plaintiff to amend the complaint to respond to the defects and inadequacies identified in the motions to dismiss. There was then a full second round of motions to dismiss, both by the government and the individual defendants. Council did respond to those motions. And then the court granted some of those dismissals with prejudice, some without prejudice, but again with the leave to amend a second amended complaint and said expressly in the order that if plaintiff did not file that second amended complaint within the deadline, he would dismiss for failure to comply with court orders or failure to prosecute. Then plaintiff filed a motion for reconsideration, withdrew that motion for reconsideration, filed a defective notice of appeal. And at that point, more than a month or effectively a month, approximately a month had gone beyond the deadline for the second amended complaint. And the district court at that point dismissed for failure to comply with the court order. And I think that was... I thought it was for failure to prosecute. I don't know if there's a difference. I read the district court's order as reflecting failure to comply with the court order. I do think the standards are slightly different in the sense that you can have a failure to prosecute. So did he fail to comply with the court order? Maybe I'm wrong, but I thought the court order said, like, if you want to amend, you have to file it by this deadline, but didn't say you have to amend. So I'm not quite sure how he didn't comply with the court order. If plaintiff still wishes to pursue this action, she is granted until to file a second amended complaint. And plaintiff has cautioned that failure to timely file a second amendment, I mean, sure. I mean, I suppose you could parse it and say he meant if you didn't do anything, it could be either failure to prosecute or failure to comply with the court order. When you then go on to the subsequent order, I think, again, he's not entirely clear about which it is. That's correct. But, in fact, you did have an express, you know, deadline for failing that second amendment. So can I just ask you what's troubling me about this? So there's a good cause exception, and looking at the cases, I'm not sure there's a difference between. So good cause sounds like it's like what was plaintiff's cause for not filing an amendment. But it seems like the cases kind of treat good cause similarly to just did the district court abuse its discretion. And I think there's a pretty strong argument here that the district court abused its discretion in treating this as failure to prosecute or failure to comply with an order, instead of just taking the premature notice of appeal as a sign that they're not planning to amend. And then when they file the later appeal, it merges. And, like, why isn't this just a normal, why wasn't judgment just entered on the merits? Because the case was done in the district court, they weren't amending, and now they appeal. So I do think there is sloppy language in perhaps one or two of the court's decisions, treating the good cause exception for failure to prosecute or good cause as somehow justifying, in the district court, a failure to move forward. And one is, you know, clear that the review standard for this court, from the district court's final order, is an abuse of discretion. And I don't think that simply saying it was my mistake is grounds under any of this court's cases. It was my legal mistake. Right? Because there's clear established case law, and this is a counsel case here. There was clear established case law that this could be grounds for dismissal. And, indeed, you know, to the extent that appellant has learned that. Is that right? I mean, usually there's, like, multiple failures to do something before you have a dismissal for failure to prosecute. Well, there were multiple failures to do something here. Right? I mean, this was the second opportunity to file the second amended complaint. This was the second time that the district court had granted dismissal with leave to amend. And he was clear about the protection. And, in fact, his first order had held open. I just don't understand that the merits had been ruled upon. If the plaintiff doesn't think they can amend and wants to stand on the existing complaint and appeal it, I mean, they should have told the court that. But I don't see what the efficiency is or the harm or anything of, like, why didn't the district court just say, I guess they're not amending your final judgment? So I do think that the court's cases are clear that if you want to stand on the original complaint, there's a mechanism for doing that. You go back and tell the court so the court can enter an order. And we are not talking here about, you know, uncounseled litigant. We have a counseled case. I would also just point to court, you know, that the argument that this is abuse of discretion, appellant has relied on a case, Ferdick v. Botelet, which involved a pro se litigant and nevertheless affirmed the dismissal for failure to comply with court orders or prosecute the case after that pro se litigant blew through, you know, an opportunity with a deadline to file an amended complaint. So I think to the extent this court's case law points in any direction, it points to the discretionary authority of a district court to manage its own docket, to decide that after two opportunities to amend a complaint and no clear indication from the appellant plaintiff what, in fact, they were trying to do in filing a premature defective notice of appeal and then having heard nothing in the wake of that notice of appeal that it could go ahead. And it's not as though either, you know, the plaintiff went back into district court and attempted to justify at that point, post final dismissal of the action, its failure to comply with court order. It instead filed a second notice of appeal, which under this court's clear case law doesn't actually get you back to the interlocutory order. So, I mean, you're now just saying we should dismiss the appeal in its entirety? I just make everyone start all over again. What's your response to counsel's point that, boy, this sure does seem wasteful because I don't think the statute of limitations that you're on has it. Well, I think the concern, Your Honor, is the parties can't sort of manufacture the court's appellate jurisdiction and the court's case law are clear that absent an abuse of discretion, you don't get to reach back. You know, I think there's in bank binding precedent on that point and, you know, I don't think he's shown an abuse of discretion here. I think it would be quite unfair to the district court who very patiently sat through a very lengthy litigation history here and gave multiple opportunities to come back and fix defects in the complaint. I would also just point out that if you actually compare the initial complaint and the First Amendment complaint, they are virtually identical, notwithstanding the court's instruction to make amendments to respond to the first round of unanswered motions to dismiss. So I think, you know, the district court did go through a fairly lengthy analysis explaining what it was doing and why it was doing it here, but it wasn't required to. And this court, of course, can and properly does look independently to the district court record in reviewing that kind of decision. And there's plenty of fodder for the district court's ultimate decision here. But assuming the court were to move on... I guess I just... It seems, yes, they should have told the district court that they didn't plan to amend. But, in fact, they didn't amend. They filed notice of appeal. That's sort of something telling the district court that. And it's not like they have an obligation to try to fix their complaint. I mean, if they lose, they lose. You won. So you couldn't just say, yes, we should have won and have us say, yes, you should have won. I don't understand why it's better to, like, get rid of all of this and start again. I don't think it's a meaningless distinction between a district court order that says the allegations and the extant complaint that you've decided to rest on are legally inadequate and a district court order saying I ordered you to do something, you didn't do it, you haven't shown any good cause for not doing it. The case is dismissed for failure to comply with court orders of prosecutor. Those are different things, and I think they should be reviewed in different ways. I don't think it's fair to the district court to treat those things as functionally inadequate. But what the district court said was sort of conditional. If you want to continue, I mean, it's not clear to me they violated the order that you read out loud. So I think the order was conditioned, but it's also true that if a party doesn't want to file the amended complaint, under this court's very clear case law, the way to do that is to go back into the district court and do so, so that the court can enter an appealable order holding that the claims are legally inadequate, and so that becomes the basis for this court's appeal. And that obviously didn't happen. I mean, if we can move on, because I know we have a lot of issues to reach. I also want to just respond briefly to this idea that the government's failure to file a cross appeal here somehow is disabling of this court reaching an argument that goes to subject matter jurisdiction. Obviously, it's black letter law in this court that subject matter jurisdiction arguments can be raised and properly are raised at any point in the proceedings. Just an example of a case is Yang v. Shalala 22F3-213, where the court said a party may question the existence of subject matter jurisdiction at any time in the proceedings. And, of course, the idea that this would somehow unfairly surprise the plaintiff is not well-founded. It was fully briefed and argued in the district court. It was entirely foreseeable that we would raise the subject matter jurisdiction objection again on appeal to the extent an appellant could have addressed it in his opening brief, he chose not to. Moving on, I don't know where the court would most helpfully like to start. Maybe just a clarification of the government's position on the FTCA claim. So in the briefs of these, you've put all your eggs in the basket that the exception doesn't apply here. If we disagreed with that, you haven't offered any argument to defend the district court's reasoning. Is that because the district court's wrong and we just have to send it back? To me, out of genre, it's because we don't think the issues are properly jurisdictionally before the court. Right? We do think the district court was correct on the merits. We don't think there are valid FTCA claims here. I think it's just a matter of California law. I thought the district court just kind of was wrong on each of the three claims in terms of interpreting what California law required her to plead. That's why I guess I assumed that you looked at it and said, yeah, we don't really have a great argument to defend that. Let's just focus on the jurisdictional point. Yeah, I mean, we obviously have not developed an argument on the merits, and I think in our view the court should and would rely on and rule on the jurisdictional issues in our favor. What should we do if we disagree with you about the jurisdictional issues? I think we'd ask for an opportunity for something about briefing if we could. And why should you be entitled to that? Well, in part, I think part of the problem here is that, you know, the parties are sort of not entirely kind of connecting in the litigation, as it were, because, of course, the opening brief didn't address in any way what are, in the government's view, multiple jurisdictional issues to this court. Even addressing these issues in the appellant's opening brief doesn't identify any basis for either the district court's jurisdiction or this court's jurisdiction. And so there's, I think, a very difficult question about what has or hasn't been properly preserved here. And so I think we would ask the court to give us the same leeway to perhaps excuse any failure to address fully any of the merits issues. But, again, obviously, I think in our view this case is particularly significant because it does raise two questions of first impression in this court. And although counsel is correct that there is another case that has recently been lodged in which I believe Mr. Corbett also represents the appellant in that case, that also raises this same set of questions, you know, to the extent the court were to somehow conclude that it has jurisdiction or that it somehow can excuse the failure to kind of follow the normal processes, I think we'd like the opportunity to address those. What do you want to say then on the jurisdictional point? Because I guess, I don't know, Judge Friedland suggested maybe she was leaning against your position. That's kind of, I won't speak for her, but that's kind of where I am. And I read the other circuit's decisions. It's a close question. It seemed to me maybe the best argument you had was that, I think it's Art Foster's decision, suggested that in this posture we're supposed to construe things kind of in the government's favor as opposed to construing the waiver broadly as the other circuits have done. That's kind of the best I thought you, the best point you had in your favor. But what do you want to tell us on that? So I do think that's an important point because obviously both the majority in the Third Circuit and the majority in the Eighth Circuit applied what they seemed to understand to be a rule that interpreting the exceptions to the FTCA's waiver should be done sort of on an expansive or at least generous kind of way. I'm sorry, the Congress. So it's not sort of unduly stripped out the remedies that Congress intended to make available in the FTCA. But I think this Court's Foster decision is exactly on point. It makes clear that an exception to an exception invokes the general rule that waivers of sovereign immunity are, you know, that ambiguity is to be construed in favor of the government. And I think that applies exactly here. And I think both Iverson and Pellegrino majority decisions specifically sort of took on and rejected that proposition from the Foster decision, and I think that's not open to this panel to do. Okay, but then they both, or at least certainly one of the two decisions, then says this isn't really ambiguous, that the language is crystal clear. And with all respect, Your Honor, I think that is not a fair reading of the statute when it's read in context. When you look at the entirety of the statute, when you compare it to other provisions of the FTCA, and then, of course, because I think it is ambiguous when you look at the legislative history. And I think there are multiple indicia in the statutory text that lead to that conclusion. If you'll let me just tick through them. First, the exception, the proviso, is limited to acts and omissions of investigative or law enforcement officers. And I think the natural reading of that phrase suggests that there is some overlap between investigative and law enforcement officers, and it's meant to connote something that looks to sort of traditional law enforcement functions. I think we all have an understanding of who would typically fall into the law enforcement camp. In your view, who are the investigative officers if they're not folks that are doing these administrative searches? So I will give you three short answers, if I can, to that. I think the Seventh Circuit has a case in which somebody who was a forensic investigator of potential arsons came within the proviso, and although his functions were limited to, after the fact, looking for evidence of arson, which he would then pass on to other people, that that would be somebody who would come within the proviso. The Pellegrino dissent looks at this kind of precise point, too, and I think it's instructive. And then third, I can imagine, well, I would leave it at that, Your Honor. So I think the second indication, you know, this proviso applies only to an officer who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of federal law. So again, if you read those three things together, as I think you should, if you read them together, they all look like things that traditional law enforcement officials... Does that require making before an and? I just don't understand how they're not doing a search. I mean, they're searching for establishing whether a passenger is carrying unlawfully a dangerous weapon explosive. I mean, they're searching for crime, evidence of crime. Respectfully, Your Honor, I cannot disagree more, and I think it's really important to look precisely at what TSA screeners do here, and we do have a declaration in the record that explains that. Screeners are like a human extension of a human counterpart to an AIT screener or an x-ray machine. They are screening for prohibited items. That may be a lithium battery. It may be explosives. And if they find any of those items, their function is at an and. They don't investigate further. They don't make an assessment about whether what they have found is illegal, whether it's evidence that could be used in a criminal prosecution, in a civil prosecution. They turn it over to somebody else. If they think it might be potentially a legal contraband, they immediately call state and local law enforcement. That's who does the investigation and seizure of the evidence. But the forensic examiner you mentioned in this Evans-Hurley case seems to fit that same bill. Well, I don't think, Your Honor. The forensic investigator is looking for evidence of a crime that has happened, and it continues that search for the investigation. TSA screeners are looking for things that aren't allowed on planes because they're perceived to potentially pose a threat. The vast majority of those things, of course, are legal. Some of them may be illegal to have on the plane, but not even illegal to bring to the checkpoint. If they were looking for criminal violations, if that was their function, query how they could do that without any individualized suspicion or probable cause. I mean, even with some of the alarms on an AIT scanner, you know, when you put your hands above your head and put your legs apart and some anomaly may be displayed, there's no reason to think that that's necessarily some kind of contraband. It may be a belt buckle. It may be, you know, a large implement in your hair. Again, their function is not to look for criminal activity. Their function solely, and it's an important one, don't get me wrong, but all they are looking for is threat items. And to call that equivalent to executing a search, and again, I think it's important to look that this is not simply even conduct a search, and it certainly isn't carry out an inspection or a screening. What happens if they find $100,000 of cash? They call state and local law enforcement on the site. So that is not dangerous on a plane, but it is illegal, or somehow triggers tax rules or something, and they're going to call law enforcement and say they're searching for illegal activity, and that's part of the investigation. But to be clear, I mean, under this court's administrative search case law, the fact that you are carrying out an administrative search for a non, some purpose other than looking for violations of criminal law, looking for criminal activity, that you happen to come across something that may or may not be evidence of a criminal violation, doesn't mean you were searching for violations of criminal law. It means that you just happened to discover something. And I do think, in the government's view, that final penultimate phrase, if I could return to your earlier question, Judge Freeland, about the disjunctive, I think Dolan is extremely instructive that the fact that one of these exceptions is framed in the disjunctive does not mean that you do not nevertheless read all three of the provisions together. And in Dolan, of course, it was the provision that included loss, miscarriage, or negligent transmission of letters or postal matter. And, of course, negligent transmission could be read extremely broadly. It would not be inconsistent with its plain language if read in isolation to apply to many, many forms of negligent transmission of mail. But the court did not do that because it said you really need to look at those three items in the list together and to understand that they were intended to inform one another. And so, too, here, I think. And, again, I would point out it's execute searches, a phrase which at the time when Congress enacted this proviso had sort of an established meaning. It was to carry out searches in connection with, you know, search warrants, search incident to arrest. Although the administrative search doctrine, of course, was at its very inception at that time to the extent that there were sort of reflections of administrative searches or authority to do that in statutory text, Congress used very different phrases. And I think it just blinkers reality not to give some meaning to that. You know, I would point out that the Third Circuit's Pellegrino decision in the majority, in addition to just simply refusing to look, as did the Eighth Circuit, at the legislative history, all of which supports our reading here because Congress, of course, had before it and chose not to enact two bills that would have expanded the scope of the attentional authority exception quite a bit more broadly to the acts of employees and instead chose this narrower thing which people said wouldn't reach anyone who carried out a search. And yet I think the Third Circuit's and the Eighth Circuit's textual reading would really include any employee, any federal employee who as part of their job duties carries out some kind of search. You know, the guard at the entrance to every Smithsonian Museum in Washington who looks through your bag to make sure you're not bringing some prohibited item in would become somebody who is covered by this proviso. And the way the Third Circuit got away around that, or I think tried to narrow that, because that is obviously a very counterintuitive understanding of what Congress was trying to do, was to then come up with a completely atextual sort of narrowing that this applies only to people who carry out what the court perceives to be very intrusive, body-touching searches. And, of course, there's just no support in the text for that. If what you're going to do is a plain text reading, that just is made up out of whole cloth. And so I think for all of those reasons, we would urge the court to follow the dissents in Pellegrino. Judge Krause's dissent, I think, is extremely comprehensive, and Judge Grinder's dissent in Iverson. If I might briefly touch on, if the court is interested in the Bivens issues, if the court has no questions, you'll be addressed on our briefing on that question. The Supreme Court has done a lot of your work for you on that front. Well, and, of course, there is, even as we speak, a pending case on First Amendment retaliation. Yeah. We know here, yes. Thank you so much. Okay. I just want to make sure, Judge Rubino, did you have any questions for the court? I have no questions. Thank you, Judge. Excellent. Okay. Thank you, Judge Rubino. And, yes, we're aware that Pellegrino has now come to you. Zig said you were concerned that the government felt that there were any sort of disqualifying conflicts. We do not, just to be clear. Okay. Thank you. All right. There's time for rebuttal. It's already up there. Okay. Very good. Please proceed, Mr. Corbett. Opposing counsel said TSA searches don't count because TSA just searches for threat items. DEA officers pretty much just search for drugs. ATF agents are probably just looking for firearms. IRS inspectors are just looking for financial documents. The rest of them are all covered. So, you know, I don't understand how TSA's limited scope turns a search into not a search. It's a limited search, but it's a search. Moving backwards, it was alleged that there's no good cause on the jurisdictional issue to make an exception and move on just because there was a legal mistake made. I think it's more than just a legal mistake. I think it was based on a court order that was unclear. It was a court order that said if you want this, do that. And we didn't want that, so we didn't do that. And it kind of omitted the rest of it that would have been instructed. The court also, as this court has pointed out, could have simply treated the notice of appeal as that kind of notice that it wanted, and it chose not to. So, you know, there's many reasons why the court should have done something differently and just didn't. And I think that supplies a good cause. And finally, it was made out to be as if this district court had some kind of incredible level of patience with our case and considering, you know, all of these errors and so on and so forth. That's simply not the case. The court below never even held a status conference. If the court below didn't like something, it tossed it out. There's simply no good communication or case management that came from the district court, which left us in a situation where mistakes were made. It's unfortunate. I learned from it. Move on. And the court right now has a chance to toss this case and make it start again or to proceed as normal. And I just don't see it in the interest of justice to change the formula. Okay. All right. Thank you very much, counsel. The case was just argued and submitted. And we are adjourned for the day.
judges: WATFORD, FRIEDLAND, Robreno